# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| U.S. COMMODITY FUTURES TRADING COMMISSION, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) ) | |
| | ) | No. 3:15-cv-00928 |
| v. | ) | Judge Lawson |
| | ) ) | Magistrate Judge Brown |
| MAVERICK ASSET MANAGEMENT, LLC, et al., | ) ) ) | |
| Defendants. | ) | |

To: The Honorable David M. Lawson

## REPORT AND RECOMMENDATION

Presently pending is Plaintiff's Amended Motion and Supporting Memorandum for Entry of Default Judgment, Permanent Injunction, Civil Monetary Penalties, and Ancillary Equitable Relief Against Defendants Maverick Asset Management, LLC and Jason Castenir (Docket Entry No. 72).

For the reasons stated below, the Magistrate Judge recommends that Plaintiff's amended motion for default judgment (Docket Entry No. 72) be GRANTED and that Plaintiff's request for permanent injunction and that Defendants, jointly and severally, pay restitution in the amount of $1,172,800 and a civil monetary penalty in the amount of $2,461,301, be GRANTED.

## I. BACKGROUND

Plaintiff, the United States Commodity Futures Trading Commission, filed this action against Defendants Maverick Asset Management, LLC, ("MAM"), Rodney Scott Phelps and Jason T. Castenir for violations of 7 U.S.C. §§ 6b(a)(1)(A)-(C), 6o(1), 6m(1) and 6k(2) (2012). Plaintiff also asserts a claim for violations of 17 C.F.R. §§ 4.20(b)-(c) against Defendant MAM. The complaint alleges that Defendants defrauded at least two members of the public ("pool participants"), one

individual and one couple, out of approximately $1.2 million in connection with pooled investments in exchange-traded commodity futures contracts. (Docket Entry No. 1, at ¶¶ 1, 5, 15, 17-18). Defendants allegedly misappropriated over $800,000 of pool participants' funds, made material omissions to existing and prospective pool participants, provided pool participants with false account statements and operated the pool illegally. *Id*. at ¶¶ 2, 19, 22-23, 28, 32, 41, 43, 48-49, 53-54.

On September 29, 2015, Defendant Phelps filed an answer to the Plaintiff's complaint. (Docket Entry No. 31). Defendants MAM and Castenir did not file an answer or otherwise respond to the complaint, and on October 27, 2015, entry of default against Defendants MAM and Castenir was entered by the Clerk of Court. (Docket Entry No. 35). On January 5, 2016, a stay was entered until March 6, 2017, to allow the parties additional time to continue settlement negotiations and to see if Phelps would be indicted in a parallel criminal action. (Docket Entry No. 48). On March 6, 2017, the Magistrate Judge conducted a telephone conference to determine the status of this action, and this action was subsequently referred for a settlement conference. (Docket Entry Nos. 49 and 50). The parties participated in the settlement conference on April 28, 2017, but were unable to reach a settlement. (Docket Entry No. 56).

On July 5, 2017, Phelps filed a motion to stay proceedings (Docket Entry No. 67), advising that he had been indicted in the parallel criminal action. On July 14, 2017, Plaintiff filed a motion for default judgment (Docket Entry No. 68) against Defendants MAM and Castenir. Plaintiff was given until August 17, 2017, to modify its motion to demand a sum certain so that any necessary hearing on the motion for default would be limited, at most, to its request for injunctive relief. (Docket Entry No. 70). On July 27, 2017, the Court granted Phelps's motion to stay all proceedings

2

against him, pending the conclusion of the criminal action against him, and ordered that the proceedings in this action would continue against MAM and Castenir so long as those proceedings did not concern Phelps individually. (Docket Entry No. 71).

On August 3, 2017, Plaintiff filed its amended motion for default judgment against Defendants MAM and Castenir. (Docket Entry No. 72).[1] Plaintiff seeks a permanent injunction, restitution in the amount of $1,172,800, and a civil monetary penalty in the amount of $2,461,301, representing three times Defendants' monetary gains from the fraud.

Plaintiff has submitted a declaration of Michael Loconte (Docket Entry No. 73-1), a futures trading investigator by the Division of Enforcement of the U.S. CFTC, establishing the amount of funds invested by the pool applicants in the pool operated by MAM; the amount of trading losses in customer funds by the pool; and the dollar amount of deposits from those customers and returned to those customers. Loconte's declaration provides proof of the following particulars:

**Bank and Futures Commission Merchant Accounts and Cash Flow Analysis**

10. Between July 9, 2013 and February 28, 2015 ("Relevant Period"), MAM had: two accounts at CBT; one account at Regions; and one account at BB&T. At the same time, MIH had: four accounts at CBT; one account at Regions; and two accounts at Gain Capital. Those accounts were as follows:

| Account Title | Line | Bank / Broker Name | Account Number |
|---|---|---|---|
| Maverick Asset Management | 1 | Community Trust Bank | ***4332 |
| Maverick Asset Management | 2 | Community Trust Bank | ***4753 |
| Maverick Asset Management | 3 | Regions Bank | ***0894 |
| Maverick Asset Management | 4 | BB&T Bank | ***4304 |
| Maverick Investment Holding | 5 | Community Trust Bank | ***1699 |

---

[1]The record reflects counsel's certification that Plaintiff's amended motion for default judgment against Defendants MAM and Castenir was electronically filed via the Court's CM/ECF system and was also sent via United States Postal Service first class mail. (Docket Entry No. 72, at 3).

| | | | |
|---|---|---|---|
| Maverick Investment Holding | 6 | Community Trust Bank | ***9658 |
| Maverick Investment Holding | 7 | Community Trust Bank | ***3966 |
| Maverick Investment Holding | 8 | Community Trust Bank | ***1378 |
| Maverick Investment Holding | 9 | Regions Bank | ***9847 |
| Maverick Investment Holding | 10 | Gain Capital | ***2341 |
| Maverick Investment Holding | 11 | Gain Capital | ***2616 |

11. I examined the bank records covering the Relevant Period, including a line-by-line review of all the credits and debits in each of the MAM and MIH-related bank accounts. Based on my analysis of these bank account records, I was able to determine the approximate amount of funds received from and paid to the Winemillers and Ms. Dillaha as customers of MAM, including funds these customers sent to MIH and the amount that remains unaccounted for. (Attachment E - Customer Cash Flows at MAM and MIH, July 9, 2013 to February 28, 2015).

12. Based on the review of the records described above, I determined that:

a. bank records for MAM and MIH indicate the Winemillers and Ms. Dillaha respectively deposited approximately $1,000,000 and $200,000, for a total of approximately $1,200,00, for the purposes of trading commodity futures directly into the MAM and MIH bank accounts;

b. approximately $303,798 and $47,120 was lost trading commodity futures contracts in two accounts at Gain Capital;

c. approximately $1,088 and $365 was the remaining balance at, respectively, Gain Capital and the nine MAM and MIH bank accounts;

d. approximately $27,200 in total was returned to Ms. Dillaha; and

e. approximately $820,434 remains presently unaccounted for. (Attachment E - Customer Cash Flows at MAM and MIH, July 9, 2013 to February 28, 2015).

*Id*. at ¶¶ 10-12.

## II. LEGAL DISCUSSION

Upon entry of default, only the complaint's well-pleaded allegations relating to liability are taken as true. *In re Family Resorts of Am., Inc.*, 972 F.2d 347, No. 91-4127, 1992 WL 174539, at *4 (6th Cir. July 24, 1992). However, "'[w]here damages are unliquidated a default admits only defendant's liability and the amount of damages must be proved.'" *Antoine v. Atlas Turner, Inc.*,

66 F.3d 105, 110 (6th Cir. 1995) (citation omitted); *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 878 (S.D. Ohio 2007) ("Once a default is entered against a defendant, that party is deemed to have admitted all of the well pleaded allegations in the complaint, except those relating to damages."). "Proof of damages ordinarily requires an evidentiary hearing in which the defendant may contest the amount, but a hearing is not necessarily required if the moving party submits uncontested, sworn affidavits sufficient to establish the amount of damages." *Broad. Music, Inc. v. Marler*, No. 1:09-CV-193, 2009 WL 3785878, at *5 (E.D. Tenn. Nov. 12, 2009); *see* Fed. R. Civ. P. 55(b)(2) (A district court "*may* conduct hearings . . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter.") (emphasis added)); *Vesligaj v. Peterson*, 331 F. App'x 351, 354 (6th Cir. 2009) (Rule 55(b)(2), "by its terms, allows but does not require the district court to conduct an evidentiary hearing.").

Here, the Magistrate Judge concludes that an evidentiary hearing is not necessary. *See Disney Enterprises v. Farmer*, 427 F. Supp.2d 807, 814 (E.D. Tenn. 2006) (granting default judgment and permanent injunction and awarding statutory damages and attorney's fees and costs when defendant failed to defend the action and the district court concluded that no valid purpose would be served by requiring an evidentiary hearing); *Chanel, Inc. v. Huang Cong*, No. 10-2086, 2011 WL 6180029, at *9 (W.D. Tenn. Dec. 8, 2011) ("Although a district court must normally hold an evidentiary hearing before issuing a permanent injunction, where 'no factual issues remain for trial,' [a] district court's decision to grant a permanent injunction without such a hearing could still be upheld....'") (citing *Gibson Guitar Corp. v. Paul Reed Smith Guitars*, LP, 423 F.3d 539, 546 (6th Cir.2005) and *Moltan Co. v. Eagle–Picher Indus., Inc.*, 55 F.3d 1171, 1174 (6th Cir.1995)) (internal

quotation marks omitted); *U.S. Commodity Futures Trading Comm'n v. PMC Strategy, LLC*, 903 F. Supp. 2d 368, 375 (W.D.N.C. 2012) ("[A]n evidentiary hearing is not required; rather, the Court may rely on affidavits or documentary evidence in the record to determine the appropriate sum."). Given the entry of default, the allegations in the well-pleaded complaint are accepted as true, and the Magistrate Judge finds that Defendants are liable for the statutory violations alleged in the complaint.

Title 7 U.S.C. § 13a-1 authorizes Plaintiff to seek permanent injunctive relief against defendants who have violated the Act. *CFTC v. Wilshire Inv. Mgmt. Corp.*, 531 F.3d 1339, 1346 (11th Cir. 2008). A plaintiff may obtain permanent injunctive relief based upon the showing of only two things: (1) that a violation of the Act occurred, and (2) that there is a reasonable likelihood of future violations. *U.S. Commodity Futures Trading Comm'n v. Complete Developments, LLC*, No. 4:10 CV 2287, 2014 WL 794181, at *26 (N.D. Ohio Feb. 26, 2014) (citing *CFTC v. Hunt*, 591 F.2d 1211, 1220 (7th Cir.1979)); *U.S. Commodity Futures Trading Comm'n v. Gutterman*, No. 12-21047-CIV, 2012 WL 2413082, at *7 (S.D. Fla. June 26, 2012) (citing *CFTC v. American Bd. of Trade, Inc.*, 803 F.2d 1242, 1250-51 (2d Cir.1986)). Past misconduct is "'highly suggestive of the likelihood of future violations.'" *U.S. Commodity Futures Trading Comm'n v. Capitalstreet Fin., LLC*, No. 3:09-CV-387-RJC-DCK, 2012 WL 79758, at *12 (W.D.N.C. Jan. 11, 2012) (quoting *Hunt*, 591 F.2d at 1220); *Gutterman*, 2012 WL 2413082, at *7.

Plaintiff has made a showing that these Defendants have engaged in acts and practices that violated 7 U.S.C. §§ 6b(a)(1)(A)-(C), 6o(1), 6m(1) and 6k(2) (2012), and that MAM violated 17 C.F.R. § 4.20(b)-(c), and unless restrained and enjoined by the Court, there is a reasonable likelihood that Defendants will continue to engage in the acts and practices alleged in the complaint.

6

Thus, based on the conduct described in the complaint and materials in support, the Magistrate Judge recommends that Plaintiff's request for a permanent injunction be granted and that Defendants be enjoined from the following:

1. Engaging in conduct in violation of 7 U.S.C. §§ 6b(a)(1)(A)-(C), 6o(1), 6m(1) and 6k(2) (2012). And, in the case of MAM, engaging in conduct in violation of 17 C.F.R. §§ 4.20(b)-(c) (2017).

2. Trading on or subject to the rules of any registered entity (as that term is defined in 7 U.S.C. § 1a(40) (2017));

3. Entering into any transactions involving "commodity interests" (as that term is defined in 17 C.F.R. § 1.3(yy) (2017) for their own personal account or for any account in which they have a direct or indirect interest;

4. Having any commodity interests traded on their behalf;

5. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

6. Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

7. Applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the CFTC, except as provided for in 17 C.F.R. § 4.14(a)(9) (2017); and/or

8. Acting as a principal (as that term is defined in 17 C.F.R. § 3.1(a) (2017)), agent or any other officer or employee of any person (as that term is defined in 7 U.S.C. § 1a(38) (2012)), registered, exempted from registration or required to be registered with the CFTC except as provided for in 17 C.F.R. § 4.14(a)(9) (2017).

(Docket Entry No. 73, at 24-25). *See U.S. Commodity Futures Trading Comm'n v. Yorkshire Grp., Inc.*, No. 13CV5323AMDST, 2016 WL 5942310, at *1 (E.D.N.Y. Oct. 12, 2016).

As to restitution, Plaintiff submitted the declaration of Loconte that establishes the amount of funds invested by the pool applicants in the pool operated by MAM; the amount of trading losses

in customer funds by the pool; and the dollar amount of deposits from those customers and returned to those customers. Pursuant to 7 U.S.C. § 13a-1(d)(3), "… the [CFTC] may seek, and the court may impose, on a proper showing on any person found in the action to have committed any violation, equitable remedies including - (A) restitution to persons who have sustained losses proximately caused by such violation (in the amount of such losses) . . . ." Defendants solicited $1,200,000 from their pool participants, but returned only $27,200 of this amount. Thus, the pool participants have sustained a combined loss in the amount of $1,172,800. Therefore, the Magistrate Judge concludes that Defendants should, jointly and severally, pay restitution in the amount of $1,172,800.

As to civil penalties, 7 U.S.C. § 13a-1(d) provides, in relevant part:

(1) . . . In any action brought under this section, the Commission may seek and the court shall have jurisdiction to impose, on a proper showing, on any person found in the action to have committed any violation--

(A) a civil penalty in the amount of not more than the greater of $100,000 or triple the monetary gain to the person for each violation . . . .

*Id.*

"'Conduct that violates core provisions of the [Commodity Exchange] Act's regulatory system-such as . . . defrauding customers should be considered very serious . . . .'" *JCC, Inc. v. Commodity Futures Trading Comm'n*, 63 F.3d 1557, 1571 (11th Cir. 1995) (quoting *In re Premex, Inc.,* [1987–1990 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 24,165 at 34,890-91 (CFTC Feb. 17, 1988)) (emphasis omitted); *Wilshire*, 531 F.3d at 1346; *U.S. Commodity Futures Trading Comm'n v. Smith*, No. 1:10CV00009, 2012 WL 1642200, at *14 (W.D. Va. Apr. 16, 2012) ("The Court is free to fashion a civil monetary penalty appropriate to the gravity of the offense and sufficient to act as a deterrent."). "Civil monetary penalties should 'reflect the abstract or general

8

seriousness of each violation' and 'should be sufficiently high to deter future violations,' which means that civil monetary penalties should make it financially detrimental to a defendant to fail to comply with the Act and Regulations so that the defendant would rather comply than risk violations." *Gutterman*, 2012 WL 2413082, at *10 (quoting *In re Grossfeld*, [1996–1998 Transfer Binder] Comm. Fut. L. Rep. (CCH) 26,921 at 44,467-8 (CFTC Dec. 10, 1996), *aff'd*, 137 F.3d 1300 (11th Cir. 1998).

In light of the conduct alleged in the complaint, the Magistrate Judge concludes that a serious and significant sanction is appropriate as these Defendants knowingly engaged in fraud, which is a core violation of the Act. Specifically, Defendants fraudulently solicited and misappropriated funds from members of the general public, and sent false account statements for months to cover up the misappropriation. Accordingly, the Magistrate Judge recommends that the defaulted Defendants, jointly and severally, pay a civil monetary penalty in the amount of $2,461,301, which represents three times Defendants' monetary gains from the fraud ($820,434.50). *See* Smith, 2012 WL 1642200, at *15 (collecting cases); *U.S. Commodity Futures Trading Comm'n v. Driver*, 877 F. Supp. 2d 968, 983 (C.D. Cal. 2012), *aff'd sub nom. Commodity Futures Trading Comm'n v. Driver*, 585 F. App'x 366 (9th Cir. 2014); *Capitalstreet Fin.,* 2012 WL 79758, at *15.

## III. RECOMMENDATION

For the reasons stated above, the Magistrate Judge **recommends** that Plaintiff's amended motion for default judgment (Docket Entry No. 72) be granted and that the District Judge enter the proposed Order for entry of default (Docket Entry No. 72-1) against Defendants Maverick Asset Management, LLC and Jason Castenir, granting Plaintiff's request for permanent injunction and that

Defendants, jointly and severally, pay restitution in the amount of $1,172,800 and a civil monetary penalty in the amount of $2,461,301.

The parties have fourteen (14) days after being served with a copy of this Report and Recommendation ("R&R") to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 155 (1985).

**ENTERED** this 9th day of November, 2017.

/s/   Joe  B.  Brown
JOE B. BROWN
United States Magistrate Judge